UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

GREGORY L. LILLY,
   Plaintiff,

vs.                           No. 05-1383

WILL SMITH, et. al.,
   Defendants

### ORDER

     This cause is before the court for consideration of the defendants' motion for summary judgment. [d/e 39]. The plaintiff was notified that a dispositive motion was filed. [d/e 39]. The plaintiff then filed two motions for an extension of time to file a response which were both granted. *See* October 9, 2007 Text Order; November 11, 2007 Text Order. The plaintiff was advised that he had been given ample time to file a response and no further continuances would be allowed. "If the plaintiff fails to file a response....the dispositive motion will be considered without input from the plaintiff." November 11, 2007 Text Order. It has been six months since the motion was filed, and the plaintiff has still failed to file a response.

### I. BACKGROUND

     The plaintiff originally filed his lawsuit pursuant to 42 U.S.C. §1983 against five defendants at the Peoria County Jail including: Officers Will Smith, Hauk and Widger and Sergeants Cox and Jones. On November 14, 2006, the court conducted a merit review of the plaintiff's complaint and found that the plaintiff had adequately alleged that the defendants had violated his Eighth constitutional rights by the use of excessive force, the failure to protect the plaintiff from the use of excessive force and cruel and unusual punishment. The claims were against the defendants in their individual capacities only.

     Specifically, the plaintiff alleged that on December 18, 2003, the defendants beat him about the head and body. The defendants then strapped him to a chair and left him in the chair from 10:00 p.m. to 7:00 a.m. the next day.

     On June 25, 2007, the court granted partial summary judgment for the defendants. Again, the plaintiff had been notified that a dispositive motion had been filed, but failed to file a response. The court found that based on the evidence before he court, the plaintiff had failed to exhaust his administrative remedies for his claim involving the restraint chair.

The court stated that it was concerned the plaintiff had lost interest in pursuing this litigation and asked him to inform the court within two weeks if he planned to continue. In addition, the court told the plaintiff that if he believed he had exhausted his administrative remedies for the dismissed claim, "he should file a motion to reconsider this order with evidence of any inmate complaint forms attached to his motion." June 26, 2007 Court Order, p. 3.

The plaintiff responded by filing a letter with the court stating that he did want to continue his case. The court notes two comments made by the plaintiff in his letter. First, the plaintiff states that he does not know what he is doing and needs a lawyer. The district court may request appointment of counsel under 28 U.S.C. § 1915(e)(1), but cannot force an attorney to accept appointment. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir.1997). To decide whether counsel should be requested, the court asks, "'[G]iven the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?'" *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). "Although a good lawyer may [do better than a *pro se* plaintiff], that is not the test, for if it was "'district judges would be required to request counsel for every indigent litigant.'" *Luttrell*, 129 F.3d at 936.

The plaintiff in this case has not shown what efforts he has made to secure his own counsel. Even if he had, the plaintiff appears competent to proceed *pro se*. His complaint clearly sets out his excessive force claim and the case does not appear complex. The court has given the plaintiff extra time to file responses to motions, but the plaintiff has made no effort to litigate his case. The plaintiff has also not shown enough factual merit to his claim of excessive force to warrant an inference that counsel would make a difference in the outcome.

Second, the plaintiff says he meant to file his case against the defendants in their official and individual capacities. It is not uncommon for pro se plaintiffs to fail to make this distinction clearly in their complaints. Nonetheless, the court assumed the plaintiff did intend to sue the plaintiffs in both capacities, but found the claims stated were individual capacity claims. See November 14, 2006 Court Order, p.2.

## II.  FACTS

The plaintiff was arrested and taken to the Peoria County Jail on December 16, 2003. The plaintiff admits that he last used heroin on the day of his arrest. (Def. Mot, Plain. Dep, p15-16, 37, 64-65). The plaintiff also admits he was housed at the Peoria County Jail on previous occasions and knew many of the defendants for some time. (Def. Mot, Plain. Dep, p. 21, 32, 33-35). The plaintiff says he first met officer Widger about twenty years prior to this incident.

Officer Widger says he knew the plaintiff by name and recognized him. The officer says based on his prior contact with the plaintiff, he believed the plaintiff had many prior problems at the jail when he was either noncompliant with staff or argumentative. "[I]t was my impression and understanding that correctional officers needed to be careful and guarded when dealing with the Plaintiff." (Def. Mot, Widger Aff, p. 1). The plaintiff says he had never had any previous problems with Officer Widger. (Def. Mot, Plain. Dep, p. 33).

The plaintiff was a pretrial detainee at the time of the allegations in his complaint on December 18, 2003. The plaintiff states that he was beginning to feel the effects of heroin withdrawal on this day. (Def. Mot, Plain. Dep, p. 37, 64-65).

Officer Widger says when he arrived to work third shift at 9:30 p.m., he was briefed that there was a toilet paper shortage in the jail. He went to the plaintiff's cell block to conduct a headcount of inmates. The plaintiff was not housed in an individual cell at this time, but was instead temporarily housed in a common area of the cellhouse. The officer says as soon as he entered the area, the plaintiff approached him and began making verbal demands for toilet paper. The officer says the plaintiff's voice was raised and he used profanity. The officer believed the plaintiff's tone and body language were "aggressive and combative." (Def. Mot, Widger Aff., p. 2).

Officer Widger says he told the plaintiff he was required to complete the headcount at the start of his shift, but he would look for toilet paper when he was finished. The officer says he climbed the steps to continue his headcount. The plaintiff remained at the bottom of the stairs continuing to make verbal demands and use profanity which continued throughout the headcount. "Given his tone and my prior experiences with Plaintiff, I began to suspect something was wrong with Plaintiff and he might be under the influence of drugs." (Def. Mot, Widger Aff., p. 2).

Officer Widger says as he was descending the stairs, he say the plaintiff standing at the base continuing his demands. The officer gave the plaintiff an order to move away from the stairs. The officer says the plaintiff did not obey his command, but instead grabbed the stair railing. The officer says as he neared the bottom of the stairs he repeated his order, but this time the plaintiff "rushed toward me." (Def. Mot, Widger Aff., p. 3). The officer said he believed the plaintiff was about to strike him, so he pushed him away.

At approximately this time, Deputy Hauk and another officer entered the area. Although no affidavit is provided from the second officer, Officer Guilandi, it appears that he may have seen the confrontation between Officer Widget and the plaintiff. Deputy Hauk says he went to the area in response to Officer Guilandi shouting that they needed to go to the lower level. (Def. Mot, Hauk Aff., p. 1).

3

Officer Widger says the plaintiff was still standing approximately an arms length away from him when the other officers arrived. Officer Widger instructed the other officers to take the plaintiff to the intake area. "At this point, I believed the best course of action was to take Plaintiff to intake, so he could be placed in an individual cell for isolation and calming down." (Def. Mot, Widger Aff., p. 3) Officer Widger says the officers removed the plaintiff from the common area with relatively little resistance, but moments after they were in the hallway, he heard a disturbance.

Deputy Hauk says once they were in the hallway, he released one of the plaintiff's hands so he could reach for his handcuffs. "Plaintiff spun around and engaged me in a struggle." (Def. Mot, Hauk Aff., p. 2). The deputy says he wrestled the plaintiff to the ground but he still fought. Officer Widger then entered the area and tried to assist the deputy. Officer Widger says he felt it was necessary to request back up assistance and called for additional help once or twice during the scuffle.

Officer Smith was the first to arrive and saw the scuffle on the ground. "Believing at this time, physical attempts to subdue Plaintiff were inadequate, I applied mace to Plaintiff in an effort to restore order." (Def. Mot, Smith Aff., p. 2). However, the plaintiff remained combative.

Sergeants Cox and Jones arrived next and had shackles as well as additional handcuffs. The officers were then able to shackle and handcuff the plaintiff and he was lifted to his feet. Officer Widger says he noticed the plaintiff had a small cut on his lip and was spitting blood on the floor. The officers repeatedly ordered the plaintiff to stop spitting blood, but he refused. Pursuant to jail policies, the plaintiff was taken to the medical unit for an exam.

The plaintiff still refused to stop spitting blood and was told no one could examine him until he stopped. The plaintiff refused to comply. Officer Smith stated that the plaintiff should be taken to intake and placed in an available detox or restraint cell until he calmed down.

Officers Widger, Hauk, Jones and Cox escorted the plaintiff to intake. The officers say the plaintiff again became combative and Officer Smith stated that the plaintiff should be placed in a restraint chair. Sergeant Jones says a short time later, he stopped in central control and observed on a monitor that the plaintiff was being treated by a nurse. The plaintiff says he was treated for a small cut above his right eyebrow and a bloody lip. He also says he had a bloodshot eye. The wounds were cleaned with antiseptic and a band-aid was applied to the cut over his eye. (Def. Mot, Plain. Aff., p. 57-59)

All of the officers state that they believe the plaintiff's behavior posed a risk to the

officers and himself.  All of the officers state that the only force used was necessary to subdue and restrain the plaintiff and restore order and discipline to the jail.

As a result of the incident, the Peoria County States Attorney's office charged the plaintiff with Aggravated Assault of a Correctional Officer.   The criminal charge was subsequently dismissed as part of a plea agreement involving other cases. (Def. Mot, Plain. Aff., p. 77).

### III. LEGAL ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  Any discrepancies in the factual record should be evaluated in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence."  Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts.  *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

### IV. ANALYSIS

The defendants argue that the plaintiff cannot demonstrate that he was subjected to excessive force because his injuries were *de minimus* and the force used was necessary under the circumstances. Because the plaintiff was a pretrial detainee, his §1983 claim falls under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment. *Butera v. Cottey,* 285 F.3d 6901, 605 (7th Cir. 2002). Nonetheless, the claim is still "analyzed under the Eighth Amendment test." *Henderson v. Sheahan,* 196 F.3d 839, 844 n.2 (7th Cir. 1999).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). The central question in an excessive force claim is "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson,* 503 U.S. at 6, *quoting Whitley v. Albers*, 475 U.S. 312, 320-21(1986)). "In making that determination, several factors are relevant, including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate."*Fillmore v. Page*, 358 F. 3d 496, 504 (7th Cir. 2004).

"[W]hile significant injury is not required, a claim ordinarily cannot be predicated upon a *de minimis* use of force." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) In addition, the absence of a serious injury tends to support that only *de minimis* force was used. *Outlaw v. Newkirk,* 259 F.3d at 839 (7th Cir. 2001).

The court agrees that the plaintiff cannot demonstrate that he was subjected to excessive force. The facts before the court demonstrate that the force used against the plaintiff was a good faith effort to maintain and restore discipline because: 1) the defendants were familiar with the plaintiff and his past; 2) the plaintiff admits he was suffering from heroin withdrawal at the time of the incident; 3) the plaintiff repeatedly refused several direct orders from the officers; 4) additional officers had to be called to subdue the plaintiff and he continued to struggle; and 5) the injuries suffered by the plaintiff were minor.

Since the plaintiff can not demonstrate that the defendants used excessive force against him, he also cannot demonstrate that any defendant failed to protect him.

**ITS IS THEREFORE ORDERED that:**

**1) The defendant's motion for summary judgement  is granted pursuant to  Fed. R. Civ. P. 56. [d/e 39]   The clerk of the court is directed to enter judgment in favor of the defendant in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)©. If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $250.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $250.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $250.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $250.00.**

**4) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 28th day of February, 2008.

                                    s\Harold A. Baker
                         _____
                                  HAROLD A. BAKER
                           UNITED STATES DISTRICT JUDGE